IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

NORTH AMERICAN SPECIALTY
INSURANCE COMPANY,

      Plaintiff,

vs.

JOSEPH C. CAMPBELL, individually
and also known as JOE CAMPBELL, and
JOSEPH CHARLES CAMPBELL, and
dba JC SHOW HORSES; JC SHOW
HORSES, LLC; and DEBORAH SAUERS,
individually,

      Defendants.

No. CIV S-09-2061 GEB EFB

FINDINGS AND RECOMMENDATIONS

_____/

      This matter was referred to the undersigned pursuant to Eastern District of California Local Rule 302(c)(19) and 28 U.S.C. § 636(b)(1) for hearing on plaintiff's motion for entry of default judgment against defendants Joseph Campbell and JC Show Horses LLC.[1]  On March 3, 2010, a hearing on the motion was held.  Attorney Enrique Marinez appeared at the hearing on

---

[1] Plaintiff is not seeking default judgment against defendant Sauers, who filed an answer to plaintiff's complaint and related counterclaims on September 29, 2009.  Dckt. No. 19.  On October 22, 2009, plaintiff moved to dismiss Sauers's counterclaims, and on November 16, 2009, plaintiff and Sauers stipulated to the granting of plaintiff's motion to dismiss.  Dckt. Nos. 36, 42.

behalf of plaintiff. No appearance was made on behalf of defendants. For the reasons that follow, and as stated on the record at the hearing, the court recommends that plaintiff's application for entry of default judgment against Campbell and JC Show Horses be granted.

I.     BACKGROUND

Plaintiff initiated this action on July 27, 2009 against Campbell, JC Show Horses, and Deborah Sauers, to enforce the rescission of an insurance contract plaintiff entered into with, and issued to, JC Show Horses, or to adjudicate plaintiff's rights and obligations under that insurance contract. Compl., Dckt. No. 1. The complaint alleges that JC Show Horses is the sole named insured under a horse mortality insurance policy issued by plaintiff, which was effective December 21, 2007 until cancelled on August 12, 2008 (the "Policy"); that Campbell, who completed and signed the application for the Policy on behalf of JC Show Horses, knowingly misstated and omitted material facts in the application; that "[h]ad the true facts been disclosed as requested and required, the Policy would not have been issued by [plaintiff]"; and that the application contained an acknowledgment which stated, "I agree that this application and its attachment shall be the basis of the contract. If anything is falsely stated, or information withheld to influence the company's decision, the insurance shall be null and void." *Id.* ¶¶ 11, 12, 15, 17.

According to the complaint, two of the horses that were insured under the Policy died in May and August 2008; thereafter, Campbell made claims, on behalf of JC Show Horses, related to each horse's death. *Id.* ¶ 20. The complaint alleges that during its investigation of the claims, plaintiff obtained information supporting various misrepresentations and/or omissions that were made in the application for the Policy, including misrepresentations regarding the ownership of the horses covered by the Policy; misrepresentations regarding the purchase price of the horses; omissions regarding horses previously owned by Campbell and Sauers which had died in the past 24 months; and omissions regarding another insurance company's denial of a claim for a horse owned by Campbell because the horse died "under suspicious circumstances." *Id.* ¶ 35.

Plaintiff now seeks rescission of the Policy, retroactive to its inception date as if no policy ever issued, and agrees that upon rescission of the Policy, plaintiff will restore to JC Show Horses the policy premium it paid. *Id.* ¶ 38. In the alternative, plaintiff seeks a declaration that it has no obligation to indemnify JC Show Horses or Campbell for the death of either of the two horses at issue.[2]

The complaint alleges that the court has diversity jurisdiction pursuant to 28 U.S.C. § 1332, since plaintiff was incorporated in New Hampshire and has its principal place of business in New Hampshire; Campbell is a citizen of California and JC Show Horses is the same entity as Campbell; and Sauers is a citizen of Washington. Compl. ¶¶ 1-6.

Certificates of service, filed on August 13, 2009, demonstrate that defendants Campbell and JC Show Horses were personally served with the complaint and summonses on July 31, 2009 in Lodi, California. Dckt. Nos. 7, 8. On August 26, 2009, pursuant to plaintiff's request, the Clerk of Court entered the default of defendants Campbell and JC Show Horses. Dckt. Nos. 10, 12, 14. Plaintiff's requests for entry of default state that both Campbell and JC Show Horses failed "to plead or otherwise defend" this action. Dckt. Nos. 10, 12. On October 19, 2009, plaintiff filed a motion for default judgment against Campbell and JC Show Horses, and mail served a copy of the motion on those defendants. Dckt. Nos. 23, 30.

The motion for default judgment was originally scheduled for hearing on November 25, 2009. Because neither Campbell nor JC Show Horses had filed an opposition to the motion or otherwise appeared in the action, the motion was submitted without oral argument. Dckt. No. 44. However, on the date of the scheduled hearing, Campbell filed a document entitled "answer," in which he denies the allegations in plaintiff's complaint, contends that he was not properly served with the summons, and asserts that since he learned of the summons, he has been attempting to retain an attorney to represent him in this action. Dckt. No. 46. He also requested

---

[2] The complaint also seeks a declaration that plaintiff has no obligation to indemnify Sauers for the death of either of the two horses covered by the Policy.

time to raise the "balance of the funds necessary to retain [counsel]" but did not indicate how much time he would need to do so. *Id.*

In light of Campbell's November 25, 2009 filing, on December 3, 2009, plaintiff's motion for default judgment was rescheduled for hearing on January 27, 2010. Dckt. No. 47. Campbell and JC Show Horses were directed to file, on or before January 13, 2010, "an opposition or a statement of non-opposition to plaintiff's motion and/or . . . a request that the court set aside the Clerk's August 26, 2009 entry of default. *See* Fed. R. Civ. P. 55(c)." *Id.*

On January 13, 2010, because neither Campbell nor JC Show Horses had complied with the December 3 order, plaintiff filed a "notice of non-receipt of documents ordered by the court and request for entry of default judgment." Dckt. No. 48. Plaintiff acknowledged that "[t]o the extent that Campbell filed a document entitled 'Answer,' after plaintiff had already obtained a Clerk's entry of default, such 'Answer' may be treated by the Court as a motion to set aside entry of default," but argued that the court should not set aside default because Campbell and JC Show Horses had not shown good cause to do so.[3] *Id.* at 2. Plaintiff argued that the court should "pronounce 'enough is enough'" and grant plaintiff's motion for default judgment. *Id.*

On January 20, 2010, because neither Campbell nor JC Show Horses, LLC had filed an opposition or a statement of non-opposition to plaintiff's motion and/or a request that the court set aside the Clerk's August 26, 2009 entry of default, as required by the court's December 3, 2009 order, the court issued an order to show cause to Campbell and JC Show Horses. Dckt. No. 49. The order stated, in part:

> Although Campbell has called the undersigned's courtroom deputy clerk indicating that he is unsure what to file or how to do so, his obligations to comply

---

[3] Because the court gave Campbell and JC Show Horses multiple opportunities to file a motion to set aside default, the court declines to treat plaintiff's "answer" as such a motion. Nonetheless, to the extent it can be construed as such, as plaintiff contends, that motion would be denied because neither Campbell nor JC Show Horses has shown good cause to set aside their defaults.

4

with the December 3, 2009 order have not been excused.[4] Pro se litigants are bound by the rules of procedure, even though pleadings are liberally construed in their favor. *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987). Local Rule 230(c) provides that "[n]o party will be entitled to be heard in opposition to a motion at oral arguments if opposition to the motion has not been timely filed by that party." Additionally, Local Rule 110 provides that failure to comply with the Local Rules or with an order of the court "may be grounds for imposition by the Court of any and all sanctions authorized by statute or Rule or within the inherent power of the Court." *See also* E.D. Cal. L.R. 183 (governing persons appearing *in pro se* and providing that failure to comply with the Federal Rules of Civil Procedure and Local Rules may be ground for dismissal, judgment by default, or other appropriate sanction); *Ghazali v. Moran*, 46 F.3d 52, 53 (9th Cir. 1995) ("Failure to follow a district court's local rules is a proper ground for dismissal.").

*Id.* The order then continued the hearing on plaintiff's motion for default judgment to March 3, 2010, and directed Campbell and JC Show Horses LLC to file, on or before February 10, 2010, an opposition or a statement of non-opposition to plaintiff's motion and/or a request that the court set aside the Clerk's August 26, 2009 entry of default, and directed them to show cause in writing why one or both of them should not be sanctioned for failing to comply with the December 3, 2009 order. *Id.* at 3. The order added that "[i]f Campbell and/or JC Show Horses LLC fails to comply with this order, the March 3, 2010 hearing will be vacated, sanctions may be imposed against Campbell and/or JC Show Horses LLC, and default judgment may be entered against one or both of those defendants." *Id.* The Clerk was directed to serve a copy of the order on defendants Campbell and JC Show Horses LLC.

On February 10, 2010, Campbell filed a letter to the court denying the allegations in plaintiff's complaint, and stating that he does not have the funds to hire an attorney to handle the collection in this case or the education to handle it *pro se*. Dckt. No. 50. He stated that he prayed "that somehow the federal court will help in the collection of the coverage in the said policies. By appointing coun[sel] or something of the sort."[5] *Id.*

---

[4] Campbell is admonished that neither the court nor its staff may give legal advice.

[5] To the extent this filing can be construed as a request for appointment counsel, that request is denied since Campbell has not shown he is entitled to such appointment or what authority, if any, supports the appointment of counsel herein.

5

1       On February 17, 2010, plaintiff filed a response to Campbell's letter, arguing that service on Campbell and JC Show Horses was proper and "[w]hat has transpired in the intervening six months is Joseph Campbell's and JC Show Horses' continuous and willful disregard of their obligations with respect to answering NAS's Complaint and, just as importantly, multiple times disregarding this Court's specific Orders regarding their required response to NAS's Complaint and Motion for Entry of Default Judgment." Dckt. No. 51 at 1-2. Plaintiff argued that Campbell and JC Show Horses had not shown good cause to set aside the clerk's entry of default and did not justify why the court should not enter plaintiff's request for default judgment. Plaintiff also noted that the February 10 letter was only on behalf of Campbell and argued that JC Show Horses' failure to submit any filing in response to the court's orders justifies entry of default judgment against JC Show Horses, even without a hearing. *Id.* at 2, n.1. Finally, plaintiff requested that Campbell's February 10 letter be stricken because it was undated and was not signed under penalty of perjury. *Id.* at 4-6.

A hearing on the motion for default judgment was held on March 3, 2010. Neither Campbell nor JC Show Horses appeared at the hearing, and neither has filed any further responses to plaintiff's complaint or to the court's multiple orders.

II.     DISCUSSION

It is within the sound discretion of the district court to grant or deny an application for default judgment. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). In making this determination, the court considers the following factors:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning the material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). "In applying this discretionary standard, default judgments are more often granted than denied." *Philip Morris USA, Inc. v.*

1 *Castworld Products, Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003) (quoting *PepsiCo, Inc. v.
2 Triunfo-Mex, Inc*., 189 F.R.D. 431, 432 (C.D. Cal. 1999)).

3   As a general rule, once default is entered, the factual allegations of the complaint are
4 taken as true, except for those allegations relating to damages. *TeleVideo Systems, Inc. v.
5 Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) (citations omitted). However, although well-
6 pleaded allegations in the complaint are admitted by a defendant's failure to respond, "necessary
7 facts *not* contained in the pleadings, and claims which are *legally insufficient*, are *not* established
8 by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

9   By way of default judgment against Campbell and JC Show Horses, plaintiff seeks either
10 (1) rescission of the Policy, retroactive to its inception date as if no policy ever issued, *or* (2) a
11 declaration that it has no obligation to indemnify JC Show Horses or Campbell for the death of
12 either of the two horses covered by the Policy. As a threshold matter, Sauers's answer disputes
13 key issues relative to plaintiff's entitlement to recision. Sauers's answer counterclaims allege
14 that she had an ownership interest in both of the horses at issue; that although she was not listed
15 as a named insured under the Policy, she paid the premiums and should have been named under
16 the Policy; and that she is therefore entitled to coverage under the Policy, Dckt. No. 19.
17 Accordingly, the court declines to rescind the Policy at this time and instead will address
18 plaintiff's alternative request for default judgment on its declaratory relief claims against JC
19 Show Horses and Campbell, and specifically plaintiff's request for a declaration that it has no
20 obligation to indemnify JC Show Horses or Campbell for the death of either of the two horses
21 covered by the Policy.

22   Here, the first *Eitel* factor weighs in plaintiff's favor on its claims for declaratory relief
23 against Campbell and JC Show Horses. Plaintiff would be prejudiced if default judgment were
24 not granted as to Campbell and JC Show Horses because plaintiff would be denied the right to
25 judicial resolution of the claims it has presented against those defendants. If Campbell and JC
26 Show Horses continue to be unresponsive in this action, the action would not proceed as to those

7

defendants and plaintiff would be denied a judicial determination regarding its rights and obligations as to those defendants.

The second and third factors also weigh in plaintiff's favor on its claims for declaratory relief against Campbell and JC Show Horses. As a general rule, once default is entered, the factual allegations of the complaint are taken as true, except for those allegations relating to the damages. *TeleVideo Systems, Inc.*, 826 F.2d at 917-18. Here, default has been entered against both Campbell and JC Show Horses.[6] Dckt. No. 14. Therefore, the factual allegations of plaintiff's complaint with regard to those defendants are taken as true. Plaintiff has alleged that Campbell, who completed and signed the application for the Policy on behalf of JC Show Horses, knowingly misstated and omitted material facts in the application; that "[h]ad the true facts been disclosed as requested and required, the Policy would not have been issued by [plaintiff]"; and that the application contained an acknowledgment which stated, "I agree that this application and its attachment shall be the basis of the contract. If anything is falsely stated, or information withheld to influence the company's decision, the insurance shall be null and void." Compl. ¶¶ 11, 12, 15, 17. The complaint also alleges that two of the horses that were insured under the Policy died in May and August 2008; that thereafter Campbell made claims, on behalf of JC Show Horses, related to each horse's death; and that during its investigation of the claims, plaintiff obtained information supporting various misrepresentations and/or omissions that were made in the application for the Policy, including misrepresentations regarding the ownership of the horses covered by the Policy (the application stated that the horses were owned by JC Show Horses, but they were actually owned by Campbell and Sauers), misrepresentations

---

[6] Although Campbell filed a document listed on the docket as an "answer," Dckt. No. 46, it is not a proper answer to the complaint. It generally denies plaintiff's claims but fails to respond with either and admission or denial of each of the enumerated factual allegations of the complaint. Moreover, the clerk's entry of default against Campbell has not been set aside. The court provided Campbell multiple opportunities to request that his default be set aside, and to oppose the motion for default judgment, but he declined to do so. He also failed to appear at the March 3, 2010 hearing on the default judgment motion.

regarding the purchase price of the horses, omissions regarding horses previously owned by Campbell and Sauers which had died in the past 24 months, and omissions regarding another insurance company's denial of a claim for a horse owned by Campbell because the horse died "under suspicious circumstances." *Id.* ¶¶ 20, 35.

California Insurance Code section 331 provides: "Concealment, whether intentional or unintentional, entitles the injured party to rescind insurance." Additionally, California Insurance Code section 332 provides that "[e]ach party to a contract of insurance shall communicate to the other, in good faith, all facts within his knowledge which are or which he believes to be material to the contract and as to which he makes no warranty, and which the other has not the means of ascertaining." *See also* Cal. Ins. Code § 338 ("An intentional and fraudulent omission, on the part of one insured, to communicate information of matters proving or tending to prove the falsity of a warranty, entitles the insurer to rescind."); § 359 ("If a representation is false in a material point, whether affirmative or promissory, the injured party is entitled to rescind the contract from the time the representation becomes false."); *TIG Ins. Co. of Michigan v. Homestore, Inc.*, 137 Cal.App.4th 749, 755-56 (2006) ("Governing law permits an insurer to rescind a policy when the insured has misrepresented or concealed material information in connection with obtaining insurance."); 28 U.S.C. § 2201(a) ("In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."). Therefore, by alleging numerous omissions and misrepresentations by Campbell and JC Show Horses with regard to the Policy, plaintiff has made out a prima facie claim for a declaratory judgment that it is not required to indemnify Campbell or JC Show Horses under the Policy. Accordingly, the second and third *Eitel* factors weigh in plaintiff's favor.

The fourth *Eitel* factor, the sum of money at stake, does not clearly weigh in either party's favor. Although plaintiff is not seeking monetary relief in this action, the amount of

money at stake under the Policy is significant and a declaration that neither Campbell nor JC Show Horses is entitled to recover under the Policy would mean that those defendants are unable to recover that money.

The fifth factor also weighs in plaintiff's favor. No genuine issue of material fact exists regarding Campbell and JC Show Horses' omissions and misrepresentations with regard to the Policy because the allegations in the complaint regarding the defaulted defendants are taken as true. *TeleVideo Systems*, 826 F.2d at 917-18. Although Campbell filed an "answer," his default was never set aside and he has since failed to defend this action, even though the court has provided him multiple opportunities to do so. Additionally, JC Show Horses has not appeared in this action at all.

The sixth factor also weighs in plaintiff's favor. JC Show Horses has failed to make any appearance in this case and Campbell has repeatedly failed to respond to court orders and to respond to the default judgment motion. Both Campbell and JC Show Horses both also failed to appear at the hearing on the default judgment motion. Therefore, their defaults cannot be said to be the result of "excusable neglect."

Finally, the seventh *Eitel* factor weighs against granting the motion for default judgment. The strong policy underlying the Federal Rules of Civil Procedure favors decisions on the merits. *Eitel*, 782 F.2d at 1472. Nonetheless, where a defendant fails to answer the complaint, a decision on the merits is "impractical, if not impossible." *Elektra Ent. Group, Inc. v. Crawford*, 226 F.R.D. 388, 393 (C.D. Cal. 2005) (citations omitted). Given JC Show Horses' failure to appear or respond to plaintiff in any way, and given Campbell's failure to comply with numerous court orders in this action, this factor does not preclude an entry of default judgment. *Id.* at 393.

Thus, on balance, the *Eitel* factors weigh in favor of granting plaintiff's motion for entry of default judgment against Campbell and JC Show Horses. Additionally, the court finds that, although defendant Sauers is not in default, there is no just reason for delaying default judgment against Campbell and JC Show Horses, in the form of declaratory relief specific to those

defendants. *See* Fed. R. Civ. P. 54(b) (When there are multiple parties in a case, "the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay."). Accordingly, the undersigned will recommend that plaintiff's motion for default judgment against Campbell and JC Show Horses be granted and that plaintiff be awarded a declaration that it has no obligation to indemnify JC Show Horses or Campbell for the death of either of the horses covered by the Policy.

Additionally, plaintiff seeks an award of costs in the amount of $455.00, pursuant to Federal Rule of Civil Procedure 54(d) and 28 U.S.C. § 1920. Plaintiff's costs consist of the process server fees associated with service of process on Campbell and JC Show Horses. Dckt. No. 27, Ex. O. Federal Rule of Civil Procedure 54(d) provides that unless a federal statute, the rules, or a court order provide otherwise, costs, other than attorney's fees, should be allowed to prevailing party, and private process servers' fees are properly taxed as costs. *Alflex Corp. v. Underwriters Laboratories, Inc*., 914 F.2d 175, 178 (9th Cir. 1990). Therefore, the undersigned will also recommend that plaintiff be awarded costs in the amount of $455.00.

III. CONCLUSION

In light of the foregoing findings this court hereby RECOMMENDS that:

1. Plaintiff's application for entry of default judgment against defendants Campbell and JC Show Horses, Dckt. No. 23, be granted;

2. Plaintiff be awarded a declaration that plaintiff has no obligation to indemnify JC Show Horses or Joseph Campbell, individually or on behalf of JC Show Horses, for the death of either of the horses covered by the Policy; and

3. Plaintiff be awarded costs in the amount of $455.00.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written

1 objections with the court and serve a copy on all parties.  Such a document should be captioned
2 "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections
3 shall be served and filed within fourteen days after service of the objections.  Failure to file
4 objections within the specified time may waive the right to appeal the District Court's order.
5 *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th
6 Cir. 1991).

7 DATED:  May 17, 2010.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE